IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 18-cv-00778-KLM

KENNETH MILES UEDING,

    Plaintiff,

v.

CHARLES BORDER, El Paso County Deputy, and
ROBERT KING, El Paso County Commander,

    Defendants.

## ORDER

**ENTERED BY KRISTEN L. MIX, UNITED STATES MAGISTRATE JUDGE.**

This matter is before the Court on Defendants Charles Border ("Border") and Robert King's ("King") **Motion to Dismiss Plaintiff's Claims One and Three of Amended Complaint Pursuant to Fed. R. Civ. P. 12(b)(6) and 42 U.S.C. § 1997e** [#24][1] (the "Motion"). Plaintiff, who proceeds as a pro se litigant,[2] filed a Response [#28] in opposition, and Defendants filed a Reply [#29]. The Court has reviewed all briefing on the Motion, the entire case file, and the applicable law, and is sufficiently advised in the premises. For the

---

[1] "[#24]" is an example of the convention the Court uses to identify the docket number assigned to a specific paper by the Court's case management and electronic case filing system (CM/ECF). This convention is used throughout this Order.

[2] The Court must construe the filings of pro se litigants liberally. *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). However, the Court should not be the pro se litigant's advocate, nor should the Court "supply additional factual allegations to round out [the pro se litigant's] complaint or construct a legal theory on [his] behalf." *See Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (citing *Hall*, 935 F.2d at 1110). In addition, pro se litigants must follow the same procedural rules that govern other litigants. *Nielson v. Price*, 17 F.3d 1276, 1277 (10th Cir. 1994).

reasons set forth below, the Motion [#24] is **GRANTED.**[3]

## I. Summary of the Case[4]

Plaintiff is currently an inmate at the Colorado State Penitentiary in Canon City, Colorado. *Am. Compl.* [#13] at 2. Defendants are employees of the El Paso County Sheriff's Office, where Plaintiff was a pre-trial detainee[5] at the time of the events relevant to this lawsuit. *Id.* at 2-3. On April 3, 2018, Plaintiff initiated this case by filing his Prisoner Complaint [#1]. Following the Court's Order Directing Plaintiff to Cure Deficiency [#6], Plaintiff filed an Amended Complaint [#13] on May 18, 2018, which is the operative pleading.

In sum, Plaintiff's claims arise from an incident that occurred on November 19, 2017, while Plaintiff was being held in a special detentions cell. *Id.* at 4. Plaintiff states that he was engaged in a two-hour de-escalation period with Defendant Border and Deputy Valentine (a non-party) in special detentions while in handcuffs and leg shackles. *Id.*

---

[3] This case has been referred to the undersigned for all purposes pursuant to D.C.COLO.LCivR 40.1(c) and 28 U.S.C. § 636(c), on consent of the parties. *See* [#21, #27, #31].

[4] In resolving the Motion [#24], the Court accepts as true all well-pled, as opposed to conclusory, allegations made in Plaintiff's Amended Complaint [#13]. *See Shero v. City of Grove, Okla.*, 510 F.3d 1196, 1200 (10th Cir. 2007) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). When considering a motion to dismiss, the Court must usually disregard facts supported by documents other than the complaint unless the Court first converts the motion to dismiss into a motion for summary judgment. *Jackson v. Integra Inc.*, 952 F.2d 1260, 1261 (10th Cir.1991). However, the Court may consider documents outside of the complaint on a motion to dismiss where the documents are both central to the plaintiff's claims and to which the plaintiff refers in his complaint. *GFF Corp. v. Associated Wholesale Grocers*, 130 F.3d 1381, 1384 (10th Cir. 1997). The Court has examined the documents attached to Plaintiff's Amended Complaint [#13] and Response [#28] and has determined that each of the documents cited herein may appropriately be considered by the Court in ruling on the pending Motion.

[5] Although the Amended Complaint does not explicitly state that Plaintiff was a pretrial detainee at the time of the relevant incidents, the parties appear to agree that he was. *See Am. Compl.* [#13] at 4 (citing "U.S.C. annotation 1605. Use of force on pretrial detainees."); *Response* [#28].

Plaintiff was asked to lay on the floor but Plaintiff did not comply. *Id.* Plaintiff was then asked to stand at the back of the cell with his chest against the wall to which Plaintiff did comply. *Id.* According to Plaintiff, the "deputies" then opened the door and rushed Plaintiff, roughly pushing him against the wall. *Id.* A deputy then attempted to remove a spit hood from Plaintiff's left hand. *Id.* Plaintiff closed his hand tightly around the spit hood and stated that the spit hood was considered "evidence." *Id.* Plaintiff alleges that, in order to release Plaintiff's grip of the spit hood, Defendant Border "took his own initiative and agenda and administered a 'thumb flex' to [Plaintiff's] left hand." *Id.* In response to the thumb flex, Plaintiff "resisted and said that he broke my thumb." *Id.* Plaintiff was then placed into an emergency restraint chair by Deputy Valentine who allegedly rammed his elbow into Plaintiff's chest. *Id.* Plaintiff states without further explanation that he "took the only defense to this attack [he] had available and used it." Plaintiff states that there is medical documentation of his injuries from the attack, "including nurse documents and the X-ray taken on [November 29, 2017]." *Id.*

As punishment for the November 19, 2017 incident, Plaintiff further alleges that his behavior modification plan was modified to include the use of restraints (handcuffs and leg shackles) during Plaintiff's pod time. *Id.* at 6. Plaintiff alleges that Defendant King played some role in this modification which lasted for fifty-two days, until January 10, 2018. *Id.* Plaintiff states that this was improper because "restraint devices are never to be applied as punishment" according to the El Paso County Sheriff's Office Detention Bureau Standard Operating Procedures Manual. *Id.*

On these facts, Plaintiff asserts an excessive force claim ("Claim One" in the Amended Complaint [#13]) against Defendant Border under the Fifth and Eighth

Amendments for the unnecessary thumb flex that was used on November 19, 2017. *Id.* at 4. Plaintiff also asserts an excessive force claim against Defendant King ("Claim Three" in the Amended Complaint [#13])[6] for his role in modifying Plaintiff's behavior modification plan. *Id.* at 6.[7] Defendants construe Claim Three against Defendant King as additionally asserting a conditions-of-confinement claim. *Motion* [#24] at 8. In light of this, and because this claim implicates living conditions and disciplinary matters, the Court also construes Claim Three as including a conditions-of-confinement claim under the Eighth Amendment. *See McCarthy v. Bronson*, 500 U.S. 136, 141 (1991) (noting that conditions of confinement include living conditions and disciplinary measures); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) (Where "the court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so despite the plaintiff's failure to cite proper legal authority.").

Plaintiff asserts his claims against Defendants Border and King in their individual and official capacities. *Am. Compl.* [#13] at 2-3. For Claim One, Plaintiff seeks $800,000 in compensatory and punitive damages for "serious bodily injury." *Id.* at 8. For Claim Three, Plaintiff seeks $200,000 in "damages for excessive use of restraints." *Id.* Plaintiff also seeks attorneys' fees. *Id.*

In the present Motion, Defendants seek to dismiss Plaintiff's remaining claims

---

[6] "Claim Two" in the Amended Complaint asserts a speedy trial violation under the Sixth and Fourteenth Amendments on facts unrelated to the claims against Defendants Border and King. [#13] at 5. This claim was dismissed on June 15, 2018, during the Court's pro se review process. *See Order* [#14]. Accordingly, the Court does not address this claim in adjudicating the present Motion [#24].

[7] In his Amended Complaint, Plaintiff does not directly allege specific conduct by Defendant King. *See Am. Compl.* [#13]. However, Plaintiff does not contest Defendants' understanding that Claim Three is against Defendant King. *See Motion* [#24] at 13; *Response* [#28].

pursuant to Fed. R. Civ. P. 12(b)(6) and 42 U.S.C. § 1997e. [#24] at 1. Specifically, the Motion argues that Plaintiff fails to state a claim for which relief can be granted, that Defendants Border and King are entitled to qualified immunity on the individual capacity claims, and that Plaintiff fails to allege an official policy, custom or practice to support his official capacity claims.

**II. Standard of Review**

The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test "the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true." *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994); Fed. R. Civ. P. 12(b)(6) (stating that a complaint may be dismissed for "failure to state a claim upon which relief can be granted"). "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Sutton v. Utah State Sch. for the Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999) (citation omitted). To withstand a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain enough allegations of fact 'to state a claim to relief that is plausible on its face.'" *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Shero v. City of Grove*, 510 F.3d 1196, 1200 (10th Cir. 2007) ("The complaint must plead sufficient facts, taken as true, to provide 'plausible grounds' that discovery will reveal evidence to support the plaintiff's allegations." (quoting *Twombly*, 550 U.S. at 570)).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct

alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement." *Id.* (alteration in original) (internal quotation marks omitted).

To survive a motion to dismiss pursuant to Rule 12(b)(6), the factual allegations in the complaint "must be enough to raise a right to relief above the speculative level." *Christy Sports, LLC v. Deer Valley Resort Co.*, 555 F.3d 1188, 1191 (10th Cir. 2009). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," a factual allegation has been stated, "but it has not show[n] that the pleader is entitled to relief," as required by Fed. R. Civ. P. 8(a). *Iqbal*, 556 U.S. at 679 (first alteration in original) (citation and internal quotation omitted).

"Under Rule 8, a plaintiff must provide a 'short and plain statement of the claim showing that the pleader is entitled to relief.'" *Tuttamore v. Lappin*, 429 F. App'x 687, 689 (10th Cir. 2011) (quoting Fed.R.Civ.P. 8(a)(2)). As with Rule 12(b)(6), "to overcome a motion to dismiss, a plaintiff's allegations must move from conceivable to plausible." *Id.* Indeed, "Rule 8(a)'s mandate . . . has been incorporated into the 12(b)(6) inquiry." *United States ex rel. Lemmon v. Envirocare of Utah*, 614 F.3d 1163, 1171 (10th Cir. 2010). Rule 8 enables "the court and the defendants to know what claims are being asserted and to determine how to respond to those claims." *Tuttamore*, 429 F. App'x at 689.

### III. Analysis

Plaintiff asserts that Defendants violated his rights under the Fifth and Eighth Amendments to the United States Constitution. *Am. Compl.* [#13] at 4, 6. First, the Fifth Amendment applies only to the federal government. *See Baker v. State*, No.

13-cv-01334-PAB-KLM, 2014 WL 624342, at *3 n.2 (D. Colo. Feb. 18, 2014). Neither Defendant Border nor Defendant King is part of the federal government in his individual capacities (nor are they members of the federal government in their official capacities through El Paso County). Second, because Plaintiff was a pretrial detainee at the time of the events underlying this lawsuit, his rights are protected under the Fourteenth Amendment's Due Process Clause rather than the Eighth Amendment's proscription against cruel and unusual punishment. *City of Revere v. Massachusetts General Hosp.*, 463 U.S. 239, 244 (1983); *Berry v. City of Muskogee*, 900 F.2d 1489, 1493 (10th Cir. 1990); *see also Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2470 (2015). Nevertheless, the Eighth Amendment still provides the benchmark for claims of excessive force and cruel and unusual punishment. *Eaves v. El Paso Cty. Bd. of Cty. Commissioners*, No. 16-cv-01065-KLM, 2017 WL 1243013, at *5 (D. Colo. Mar. 24, 2017); *Snyder v. Spilde*, No. 15-cv-02169-GPG, 2016 WL 1059612, at *2 (D. Colo. Mar. 17, 2016). Therefore, the Court analyzes Plaintiff's claims under the Fourteenth Amendment, which incorporates the Eighth Amendment framework, and the *Kingsley* "objectively reasonable" test for excessive force against pretrial detainees. *Kingsley*, 135 S. Ct. at 2473 (2015).

**A.     Qualified Immunity**

Defendants argue that they are entitled to qualified immunity on both Claims One and Three. *Motion* [#24] at 11, 13. Government officials are entitled to qualified immunity from liability for civil damages when their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person in their position would have known. *See Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity also offers protection from trial and other burdens of litigation. *See Mitchell v. Forsyth*, 472 U.S. 511,

526 (1985).

The Court's analysis of qualified immunity in the context of a 12(b)(6) motion involves two inquires; because the Court must find for the plaintiff regarding both inquiries in order to deny qualified immunity, they need not be addressed in a particular order.  *See Pearson v. Callahan*, 555 U.S. 223, 236 (2009). First, the Court must determine whether the alleged facts taken in the light most favorable to the plaintiff sufficiently allege a constitutional violation. *Saucier v. Katz*, 533 U.S. 194, 201 (2001).  Second, the Court must consider whether Plaintiff has shown that "the constitutional right was clearly established at the time of the alleged unlawful activity."  *Swanson v. Town of Mountain View, Colo.*, 577 F.3d 1196, 1199 (10th Cir. 2009) (citing *Pearson*, 555 U.S. at 232).

The question of whether the constitutional right was clearly established must be asked in "the context of the particular case before the court, not as a general, abstract matter."  *Simkins v. Bruce*, 406 F.3d 1239, 1241 (10th Cir. 2005).  That is, "[t]he relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer [in the defendant's position] that his conduct was unlawful in the situation he confronted."  *Saucier*, 533 U.S. at 202; *see also Brosseau v. Haugen*, 543 U.S. 194, 198 (2004).  In order for a constitutional right to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clear weight of authority from other circuits must establish the constitutional right.  *Medina v. City & Cty. of Denver*, 960 F.2d 1493, 1498 (10th Cir. 1992) (overruled on other grounds by *Morris v. Noe*, 672 F.3d 1185, 1197 n.5 (10th Cir. 2012)).  In other words, there must be case law in which a constitutional violation was found based on similar conduct.  *See Murrell v. Sch. Dist. No. 1*, 186 F.3d 1238, 1251 (10th Cir. 1999).  "The precedent is considered on point if it

involves materially similar conduct or applies with obvious clarity to the conduct at issue." *Lowe v. Raemisch*, 864 F.3d 1205, 1208 (10th Cir. 2017) (internal quotations omitted). "Because the prior case must involve materially similar conduct or apply with obvious clarity, qualified immunity generally protects all public officials except those who are plainly incompetent or those who knowingly violate the law." *Id.* (internal quotations omitted).

    **1.    Excessive Force**

According to *Kingsley*, to successfully allege a 42 U.S.C. § 1983 claim of excessive force under the Fourteenth Amendment, a pretrial detainee plaintiff must allege two elements: (1) that the defendant possessed a "purposeful, a knowing, or possibly a reckless state of mind," *Kingsley*, 135 S.Ct. at 2472 (finding negligent or accidental infliction of harm is beneath the threshold of constitutional due process); and (2) that the defendant's actions were objectively unreasonable in light of facts and circumstances of that particular case. *Id.* at 2472-73.

Here, Plaintiff makes no allegations that either Defendant's behavior was negligent or accidental. Moreover, construed in the light most favorable to him, Plaintiff's allegations suggest purposeful conduct; i.e., Defendant Border "[taking] his own initiative and agenda and administer[ing] a thumb flex" and Defendant King "modif[ying] my behavior Modification Plan, to include restraints during my pod time." *Am. Compl.* [#13] at 4, 6. Therefore, Plaintiff adequately alleges the first element of a purposeful or knowing state of mind as required for an excessive force claim under the Fourteenth Amendment as to Defendant Border and Defendant King.

To determine objective reasonableness under the second element, the Court should consider, but is not limited to considering, the following factors: "the relationship between

the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; . . . whether the plaintiff was actively resisting"; and the legitimate interests of the need to maintain internal order and security at a prison institution. *Kingsley*, 135 S.Ct. at 2472 (citing *Graham v. Connor*, 490 U.S. 386, 396 (1989)). Not "every malevolent touch by a prison guard gives rise to a federal cause of action." *Hudson v. McMillian*, 503 U.S. 1, 9 (1992). De minimus uses of physical force are the sort that are not "repugnant to the conscience of mankind" and are not a constitutional violation. *Id.* at 9-10 (quoting *Whitley v. Albers*, 475 U.S. 312, 327 (1986)).

### a. Defendant Border

Plaintiff alleges that after he refused to surrender a spit hood in his hand, Defendant Border "took his own initiative and agenda and administered a 'thumb flex' to my left hand." *Am. Compl.* [#13] at 4. Although Plaintiff alleges that "deputies . . . rushed me and pushed and roughly held me against the wall" and that "Deputy Valentine forcably [sic] placed me into the Emergency Restraint Chair (E.R.C.) which including [sic] him ramming his elbow into my chest," he only attributes the use of a thumb flex to Defendant Border. *Id.*

The Court applies the *Kingsley* factors to determine whether Plaintiff's allegations regarding Defendant Border's actions state a constitutional violation. Specifically, the Court examines allegations regarding the need for force and the amount of force, the threat perceived by Defendant Border, whether Plaintiff was resisting, the legitimate interests in the need to maintain internal order, and the extent of Plaintiff's injuries. *See Kingsley*, 135 S.Ct. at 2473.

First, Plaintiff admits that he was resisting deputies' efforts to remove the spit hood from his hand. *Am. Comp.* [#13] at 4. Second, although not explaining his actions, Plaintiff admits that he "took the only defense to this attack [he] had available and used it." *Id.* Additionally, while Plaintiff alleges that he "said that [Defendant Border] broke my thumb" in response to the thumb flex and that "there is medical documentation of the injury of the attack by the peace officers, including nurse documents and the X-Ray taken on [November 29, 2017]," *id.*, he fails to allege what, if any, injury he actually suffered much less the severity of the injury to meet the relatively high standard for excessive force.[8] *See Marshall v. Milyard*, 415 F. App'x 850, 853 (10th Cir. 2011) (finding that pushing a cubicle-cell wall into a prisoner but only causing bruises is not enough to constitute a constitutional violation); *Norton v. City of Marietta*, 432 F.3d 1145, 1156 (10th Cir. 2005) (finding that prison guards' alleged grabbing and twisting of a prisoner's neck was "not objectively harmful enough to establish a constitutional violation").

Because Plaintiff admits non-compliance with officers, admits defensive action, and fails to allege facts demonstrating a serious injury, the Court finds that Plaintiff fails to sufficiently allege that Defendant Border's actions were "objectively unreasonable" in light of Defendant Border's need to maintain order. Thus, Defendant Border's actions do not rise to the level of a constitutional violation. Finding that Plaintiff's claim does not rise to the level of a constitutional violation, the Court need not determine whether the "clearly established right" prong of the qualified immunity test is met. *Saucier*, 533 U.S. at 201. Therefore, the Court concludes that Defendant Border is entitled to qualified immunity and

---

[8] The Court notes that the medical records attached to Plaintiff's Response only indicate that Plaintiff's left hand had "slight swelling" and "no bruising." [#28] at 10.

**grants** Defendants' Motion [#24] to the extent that Plaintiff's claim of excessive force against Defendant Border in his individual capacity is **dismissed without prejudice.** *See Crump v. James Irwin Charter Sch.*, No. 12-cv-00008-PAB-KLM, 2012 WL 1247186, at *3-4 (D. Colo. Mar. 21, 2012) (allowing dismissal of a pro se plaintiff's claims pursuant to Rule 12(b)(6) without prejudice).

        **b.**        **Defendant King**

With respect to Defendant King, Plaintiff fails to allege any specific facts concerning the use of force against him by this Defendant. *Am. Compl.* [#13] at 6. Rather, he simply states that the modification of his behavior modification plan to include handcuffs and shackles during pod time "occurred due to the complaint in Claim One." *Id.* Additionally, Plaintiff alleges that the "El Paso County Sheriff's Office Detention Bureau Standard Operating Procedures Manual for security and use of force and restraints" states that "[r]estraint devices are never to be applied as punishment." *Id.* (internal quotation marks omitted). Following the factors recommended in *Kingsley*, the Court considers whether the allegations demonstrate that there was a legitimate reason for Defendant King to require that Plaintiff wear restraints during pod time for fifty-two days. *See* 135 S. Ct. at 2473.

Generally, where a plaintiff alleges excessive force from the use of restraints, he must demonstrate more than a de minimus injury. *See Fisher v. City of Las Cruces*, 584 F.3d 888, 898 (10th Cir. 2009) ("[I]n handcuffing cases, a plaintiff must establish some non-de minimus actual injury . . . A number of circuits agree and have adopted some form of a non-de minimus injury requirement in excessive force handcuffing cases."). Even viewing

allegations in a light most favorable to Plaintiff, he plainly fails to allege any injury stemming from the use of restraints. *Am. Compl.* [#13] at 6. Furthermore, his allegation that the use of restraints was punishment is conclusory, and his reference to the manual provides no evidence to support it. *Id.* To the extent that Plaintiff alleges Defendant King violated the manual, the "failure to adhere to administrative regulations does not equate to a constitutional violation." *Pedro v. Smith*, No. 11-cv-02746-CBS, 2012 WL 4442805, at *3 (D. Colo. Sept. 26, 2012) (quoting *Hovater v. Robinson*, 1 F.3d 1063, 1068 n. 4 (10th Cir.1993)) (collecting cases). Therefore, because Plaintiff fails to allege any facts in support of his claim, the Court finds that Plaintiff fails to allege that Defendant King's actions were "objectively unreasonable." *Kingsley*, 135 S.Ct. at 2473.

Finding that Plaintiff's claim does not rise to the level of a constitutional violation, the Court need not determine whether the "clearly established right" prong of the qualified immunity test is met. *Saucier*, 533 U.S. at 201. The Court concludes that Defendant King is entitled to qualified immunity on Plaintiff's excessive force claim and **grants** Defendants' Motion [#24] to the extent that this claim against Defendant King in his individual capacity is **dismissed without prejudice**. *See Crump*, 2012 WL 1247186, at *3-4.

### 2. Conditions of Confinement

As to the conditions-of-confinement claim construed within Claim Three, Plaintiff alleges that "Commander [King], Classification [sic], and mental health specialists employed through El Paso County Colorado at the Sheriff's Office, [ ] modified [Plaintiff's] behavior Modification Plan, to include" the use of restraints (handcuffs and leg shackles) during Plaintiff's pod time. *Am. Compl.* [#13] at 6. As stated above, Plaintiff further alleges

that this modification lasted for fifty-two days and was contrary to the "Sheriff's Office Detention Bureau Standard Operating Procedures Manual for security and use of force and restraints[.]" *Id.*

"The Eighth Amendment's prohibition of cruel and unusual punishment imposes a duty on prison officials to provide humane conditions of confinement, including adequate food, clothing, shelter, sanitation, medical care, and reasonable safety from bodily harm." *Tafoya v. Salazar*, 516 F.3d 912, 916 (10th Cir. 2008) (citations omitted). The conditions must comply with "contemporary standards of decency." *Estelle v. Gamble*, 429 U.S. 97, 103 (1976). The Eighth Amendment prohibits "punishments which are incompatible with the evolving standards of decency that mark the progress of a maturing society," and that "involve the unnecessary and wanton infliction of pain." *Estelle*, 429 U.S. at 102 (citations and quotations omitted). When determining whether a plaintiff has established cruel and unusual punishment, the Court applies a two-part test that consists of an objective and subjective component. *Craig v. Eberly*, 164 F.3d 490, 495 (10th Cir. 1998). "The objective component requires that the alleged deprivation be sufficiently serious," and "[t]he subjective component requires the jail official to have a sufficiently culpable state of mind," meaning deliberate indifference. *Id.* (internal quotation marks and citations omitted).[9]

---

[9] The Tenth Circuit Court of Appeals, in a recent, unpublished opinion, has noted that circuit courts "are split on whether [*Kingsley v. Hendrickson*, 135 S. Ct. 2466 (2015),] alters the standard for conditions of confinement and inadequate medical care claims brought by pretrial detainees," with the Second, Seventh, and Ninth Circuits saying it has and with the Fifth, Eighth, and Eleventh Circuits saying it has not and that *Kingsley* applies only to excessive force claims. *Estate of Vallina v. Cty. of Teller Sheriff's Office*, __ F. App'x __, __, No. 17-1361, 2018 WL 6331595, at *2 (10th Cir. Dec. 4, 2018). The Tenth Circuit has not yet directly determined this issue. *See id.* However, given that (1) the parties have not raised this issue, (2) the Tenth Circuit's last published statement on the appropriate test indicates that the standard has not changed at this time, *see Perry v. Durborow*, 892 F.3d 1116, 1121 (10th Cir. 2018), and (3) Plaintiff's claims would fail under either standard, the Court proceeds on the basis that the Fourteenth and Eighth Amendment standards

Here, Plaintiff's sparse and conclusory allegations regarding the use of restraints during pod time do not rise to the level of a constitutional violation. *See Saleh v. Ray*, No. Civ. A. 02-3241-CM, 2003 WL 23484639, at *6 (D. Kan. Nov. 12, 2003), *aff'd*, 107 F. App'x 865 (10th Cir. 2004) ("the fact that plaintiff remained in ambulatory restraints for eighteen hours to twenty-four hours does not, itself, rise to the level of an Eighth Amendment violation." (citing *Cunningham v. Eyman*, 17 Fed. Appx. 449, 453–454 (7th Cir. 2001); *Key v. McKinney*, 176 F.3d 1083, 1086 (8th Cir.1999))). "To prevail on the first prong, even severe restrictions do not satisfy the objective component if the inmate is not deprived of 'the minimal civilized measure of life's necessities.'" *McMillan v. Wiley*, 813 F. Supp. 2d 1238, 1250 (D. Colo. 2011) (quoting *Craig*, 164 F.3d at 495). Further, the sufficiency of a conditions-of-confinement claim depends on "the particular facts of each situation; the circumstances, nature, and duration of the challenged conditions must be carefully considered." *DeSpain v. Uphoff*, 264 F.3d 965, 974 (10th Cir. 2001). While prisons must provide humane conditions of confinement, including adequate food, clothing, shelter, sanitation, medical care, and reasonable safety from bodily harm, *see Tafoya*, 516 F.3d at 916, "only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation." *Wilson v. Seiter*, 501 U.S. 294, 298 (1991). Therefore, in the absence "of a specific deprivation of a human need, an Eighth Amendment claim based on prison conditions must fail." *Shifrin v. Fields*, 39 F.3d 1112, 1114 (10th Cir. 1994). Prison conditions may be "'restrictive and even harsh'" without violating constitutional rights. *Barney v. Pulsipher*, 143 F.3d 1229, 1311

---

are identical for purposes of Plaintiff's claim. *See Estate of Vallina*, 2018 WL 6331595, at *3.

(10th Cir. 1998) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)). "[E]xtreme deprivations are required to make out a conditions-of-confinement claim." *Hudson*, 503 U.S. at 9. Therefore, the Court finds that Plaintiff's allegations regarding the use of restraints during pod time, *Am. Compl.* [#13] at 6, do not allege that he was deprived of a basic human need.

Moreover, even if Plaintiff did allege a sufficiently serious deprivation, he fails to show personal participation by Defendant King to demonstrate a sufficiently culpable state of mind. Personal participation is an essential allegation in a civil rights action. *See Bennett v. Passic*, 545 F.2d 1260, 1262-63 (10th Cir. 1976). To establish personal participation, Plaintiff must show that Defendant King caused the deprivation of a federal right. *See Kentucky v. Graham*, 473 U.S. 159, 166 (1985). There must be an affirmative link between the alleged constitutional violation and Defendant King's participation, control or direction, or failure to supervise. *See Butler v. City of Norman*, 992 F.2d 1053, 1055 (10th Cir. 1993). A supervisory official may not be held liable for the unconstitutional conduct of his or her subordinates on a theory of respondeat superior. *See Iqbal*, 556 U.S. at 676. Therefore, in order to succeed in a § 1983 suit against a government official for conduct that arises out of his supervisory responsibilities, Plaintiff must allege and demonstrate that: "(1) the defendant promulgated, created, implemented or possessed responsibility for the continued operation of a policy that (2) caused the complained of constitutional harm, and (3) acted with the state of mind required to establish the alleged constitutional deprivation." *Dodds v. Richardson*, 614 F.3d 1185, 1199 (10th Cir. 2010) (citation omitted). In order to state a claim in federal court, Plaintiff "must explain what each defendant did to him or her; when the defendant did it; how the defendant's action harmed him or her; and, what specific legal

right the plaintiff believes the defendant violated." *Nasious v. Two Unknown B.I.C.E. Agents*, 492 F.3d 1158, 1163 (10th Cir. 2007). The general rule that pro se pleadings must be construed liberally has limits and "the court cannot take on the responsibility of serving as the litigant's attorney in constructing arguments and searching the record." *Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005).

Finding that Plaintiff's conditions-of-confinement claim does not rise to the level of a constitutional violation, the Court need not determine whether the "clearly established right" prong of the qualified immunity test is met. *Saucier*, 533 U.S. at 201. The Court concludes that Defendant King is entitled to qualified immunity on Plaintiff's conditions-of-confinement claim and **grants** Defendants' Motion [#24] to the extent that this claim against Defendant King in his individual capacity is **dismissed without prejudice**. *See Crump*, 2012 WL 1247186, at *3-4.

**B.     Official Capacity Claims**

Plaintiff also alleges that both Defendants in their official capacities have violated his rights under the Eighth Amendment to be free from excessive force. *Am. Compl.* [#13] at 2, 3. Defendants argue that Plaintiff has failed to sufficiently allege official capacity claims. *Motion* [#24] at 12.

"An action against a person in his official capacity is, in reality, an action against the government entity for whom the person works." *Pietrowski v. Town of Dibble*, 134 F.3d 1006, 1009 (10th Cir. 1998); *Monell v. New York City Dep't of Social Servs.*, 436 U.S. 698, 692 (1978). Here, Plaintiff alleges that Defendants are employees of El Paso County. *Am. Compl.* [#13] at 2, 3. Therefore, to assert an entity liability claim against El Paso County,

Plaintiff must allege that: (1) his constitutional rights were violated; and (2) an official policy or custom was the moving force behind the constitutional deprivation. *Bd. of Cty. Comm'rs v. Brown*, 520 U.S. 397, 404 (1997).

The Court finds *supra* that Plaintiff has failed to allege a constitutional violation relating to the actions of either Defendant. Therefore, because Plaintiff fails to allege a constitutional violation by Defendants, Plaintiff fails to meet the first prong of the entity liability test. Accordingly, the Court **grants** Defendants' Motion [#24] to the extent that Plaintiff's claims against Defendants Border and King in their official capacities are **dismissed without prejudice**.[10] *See Crump*, 2012 WL 1247186, at *3-4.

### IV. Conclusion

Based on the foregoing,

IT IS HEREBY **ORDERED** that Defendants' Motion [#24] is **GRANTED** and that Plaintiff's remaining claims are **DISMISSED without prejudice**, as outlined above.

IT IS FURTHER **ORDERED** that the Clerk of Court shall **CLOSE** this case.

DATED: March 7, 2019

BY THE COURT:

*Kristen L. Mix*

Kristen L. Mix
United States Magistrate Judge

---

[10] As the Court has dismissed all of Plaintiff's claims, the Court does not address Defendants' argument that the Prison Litigation Reform Act, 42 U.S.C. 1997e, bars the relief requested by Plaintiff.